# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**WILLIAM ROOP**; and
**JANET ROOP**,

    Plaintiffs,

v.                              Case No. 8:23-cv-1742-WFJ-TGW

**PRIME RATE PREMIUM**
**FINANCE CORPORATION, INC.**,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Prime Rate Premium Finance Corporation, Inc.'s ("Prime Rate") Motion to Dismiss (Dkt. 31), as well as Plaintiffs William and Janet Roop's Response (Dkt. 37). On December 11, 2023, the Court held a hearing on this matter (Dkt. 38). The parties have since filed supplemental briefings (Dkt. 44; Dkt. 45). Upon careful consideration, and with the benefit of able argument from both sides, the Court denies Prime Rate's Motion.

## BACKGROUND

In the instant case, Plaintiffs sue Prime Rate under rights assigned to them by non-parties Chol Solutions, LLC ("Chol") and Kason Meadows (collectively, the "Insureds"). Plaintiffs essentially allege that Prime Rate wrongfully canceled the Insureds' general liability policy with Western World Insurance Company

("Western World") prior to an accident at Plaintiffs' residence. Plaintiffs seek statutory damages for this cancelation and, in the alternative, common law damages.

## I.     The Underlying Insurance Policy

In July 2016, Prime Rate and Chol entered into a premium finance agreement (the "Agreement"). Dkt. 21-2 at 1. Thereunder, Prime Rate agreed to advance Chol's premiums for a commercial general liability policy issued by Western World (the "Policy") in exchange for certain repayment terms. Dkt. 21-2 at 1–3; *see generally* Dkt. 21-1. The Agreement also appointed Prime Rate as attorney-in-fact with "full authority to affect cancellation of the [Policy.]" Dkt. 21-2 at 2.

On November 14, 2016, Prime Rate sent Chol notice of intent to cancel the Policy due to a missed installment (the "Notice of Intent"). Dkt. 21-3 at 1. Prime Rate explained that the Policy "will be cancelled effective 12/05/2016 at 12:01 A.M. unless [the] payment is received in our office no later than 12/05/2016." *Id.* Prime Rate also noted that "[y]ou may or may not receive a further notice prior to cancelation of [the Policy]. . . . we shall request and effect cancellation of [the Policy], pursuant to the power of attorney signed by you, unless the amount now due, shown below, is received in our office before the cancel effective date." *Id.*

On November 28, 2016, approximately one week before the aforementioned cancel effective date, Prime Rate sent Chol notice of cancellation (the "Prime Rate Notice of Cancellation"). Dkt. 21-4 at 1. Prime Rate stated that "the [Policy]

described above is canceled for non-payment of an installment in accordance with the conditions and terms of the [Agreement]. . . . This cancellation is effective one day after the above captioned date [(12/05/2016)], at the hour indicated in the [P]olicy at the effective time." *Id.*

Notwithstanding the Prime Rate Notice of Cancellation, Plaintiffs claim that, on December 5, 2016, Chol "made payment of all outstanding installments then due, plus late fee, through Prime Rate's online payment portal." Dkt. 21 at 3. Plaintiffs allege that Chol consequently believed the Policy to still be in effect at this point. Dkt. 21 at 3; Dkt. 21-5 at 1. The Policy was nevertheless canceled on December 5, 2016, at 12:01 A.M. Dkt. 21-1 at 2.

Due to a separate notice of cancellation sent by Western World on November 22, 2016 (the "Western World Notice of Cancellation"), however, Plaintiffs and Prime Rate disagree about who actually canceled the Policy and why. Plaintiffs claim that Prime Rate canceled the Policy for the Insureds' non-payment of the monthly installment discussed above. Dkt. 21 at 5. Prime Rate maintains that Western World unilaterally canceled the Policy because the Insureds added an additional named insured after inception of the Agreement without paying additional premiums. Dkt. 31 at 3, n.1; Dkt. 44 at 3–6. The Western World Notice of Cancellation itself is not clear on this point—it simply states that "your insurance will cease at and from [December 5, 2016, at 12:01 A.M.] . . . THIS ACTION HAS

3

BEEN TAKEN FOR THE FOLLOWING SPECIFIC REASON OR REASONS[:] **non-payment**. Dkt. 21-1 at 2 (emphasis in original).

## II. The Underlying Lawsuit

On January 3, 2017, Mr. Meadows was working at Mr. Roop's residence on behalf of Chol. Dkt. 21 at 3. Due to Mr. Meadow's negligence, Mr. Roop "tripped and fell on a container lid" and was seriously injured. *Id.* Mr. Meadows allegedly called his insurance agent two days later. *Id.* Plaintiffs maintain that the "agent confirmed the Policy was still in effect and the amount of the January installment. The same day, the Insureds made payment of the January installment through Prime Rate's online payment portal." *Id.* at 3–4.

On June 27, 2017, Plaintiffs filed a lawsuit in state court related to Mr. Roop's accident (the "Underlying Lawsuit").[1] *Id.* at 4. Plaintiffs then filed an amended complaint which named the Insureds as defendants on January 26, 2018. Dkt. 37-2 at 1. The Insureds, however, were first served on February 19, 2020, with Plaintiff's second amended complaint. Dkt. 21 at 4; Dkt. 37-3 at 1. At this point, the Insureds attempted to tender their defense to Western World, but Western World declined to defend or indemnify the Insureds because the Policy had already been canceled. Dkt. 21 at 4.

---

[1] The Underlying Lawsuit was eventually styled as *William C. Roop and Janet Colleen Roop v. Manasota Flooring, Inc., Chol Solutions, LLC, and Kason Meadows*, No. 2017-CA-003201-NC (Fla. 12th Jud. Cir. Ct.).

On March 9, 2020, the Insureds filed their responsive pleading in the Underlying Lawsuit. *Id.* After a series of amended joint stipulations and agreements, the parties entered into a *Coblentz*-like settlement agreement.[2] *Id.* at 4–5. Thereunder, the Insureds agreed to the entry of a final judgment of $1,000,000 in favor of Plaintiffs and an assignment of all of the Insureds' rights and causes of action against any entity arising out the January 3, 2017, incident. *See generally* Dkt. 21-6. In exchange, Plaintiff agreed not to collect on the final judgment against the Insureds. *Id.* On October 9, 2023, an amended final judgment was entered in the Underlying Lawsuit fully embodying the terms described above. Dkt. 21-8 at 1–2.

### III. The Instant Lawsuit

On July 10, 2023, Plaintiffs filed the instant lawsuit in state court. Dkt. 1-1 at 1. Prime Rate removed the action to this Court less than one month later and, on October 20, 2023, Plaintiffs filed an Amended Complaint. Dkt. 1 at 1; Dkt. 21 at 1. Plaintiffs assert two claims through the Insureds' assignment: Count I—wrongful cancellation of the Policy under Florida Statutes § 627.848; and Count II—common law negligence, in the alternative, for cancellation of the Policy. Dkt. 21 at 5–6. Prime Rate now moves to dismiss the Amended Complaint with prejudice. Dkt. 16.

---

[2] "*Coblentz* agreements permit an insured party to 'enter into a reasonable settlement agreement with the [injured party] and consent to an adverse judgment for the policy limits that is collectable only against the insurer.'" *Jimenez v. Gov't Emps. Ins. Co.*, 651 F. App'x 850, 851 n.1 (11th Cir. 2016) (quoting *Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1230 n. 1 (11th Cir. 2015)).

5

## LEGAL STANDARD

A complaint withstands dismissal under Federal Rule of Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

Prime Rate moves to collectively dismiss Counts I & II on two grounds: (1) Plaintiffs' attachments contradict the notion that Prime Rate cancelled the Policy,

and (2) Plaintiffs' claims are time-barred. Dkt. 44 at 3–6; Dkt. 31 at 11–15. In addition, Prime Rate independently requests dismissal of Count I on statutory grounds and dismissal of Count II under the independent tort doctrine. Dkt. 44 at 6–9; Dkt. 31 at 6–11. The Court will address Prime Rate's arguments in turn.[3]

## I.     Plaintiffs' Attachments and Cancellation of the Policy

The instant lawsuit is factually predicated on the notion that Prime Rate caused the Policy to be canceled instead of Western World. There is no dispute that Counts I & II would necessarily fail as a matter of law if this were not the case. It follows that the first issue to consider is whether the attachments to the Amended Complaint contradict this foundational premise and doom Plaintiffs' claims. For, "a 'litigant may be defeated by his own evidence, the pleader by his own exhibits' when 'he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them.'" *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504 (11th Cir. 2019) (cleaned up) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)).

---

[3] As a preliminary matter, contrary to Plaintiffs' suggestion, the Court finds that Prime Rate did not waive (under Federal Rule of Civil Procedure 12(g)(2)) the arguments brought in the instant Motion to Dismiss (Dkt. 31) by not bringing them in its previous motion to dismiss (Dkt. 13). The Court never ruled on Prime Rate's previous motion, which addressed a previous version of Plaintiffs' Amended Complaint. Moreover, the Court agrees that "Rule 12(g) does not require consolidation of defenses raised in a second Rule 12(b)(6) motion. . . . Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim[.]" *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 686 (5th Cir. 2017).

7

The subject attachments here are business records. They purportedly show: (1) the Insureds failed to pay endorsements/premiums for additional insureds added to the Policy after the Agreement; (2) an employee or agent at Prime Rate believed and noted that the Policy was canceled by Western World instead of Prime Rate; and (3) Western World provided a return of premiums to Prime Rate after the Policy was allegedly canceled by Western World. *See* Dkt. 21-1 at 3–11; Dkt 21-5 at 2–4. Prime Rate argues that this proves that Western World unilaterally canceled the Policy and that, even if Prime Rate had attempted to cancel the Policy, the Policy was already canceled by Western World effective December 5, 2016.

The Court disagrees at this stage. While documents may be considered at the dismissal stage if they are attached to the complaint, *LaGrasta*, 358 F.3d at 845, all the facts accepted as true therein are viewed in a light most favorable to the plaintiffs, *Pielage*, 516 F.3d at 1284. Viewing the entire pleading in this light, it is still plausible that Prime Rate canceled the Policy or caused the Policy to be canceled. To begin with, the Western World Notice of Cancellation—which followed Prime Rate's Notice of Intent and closely followed its cancel effective dates—simply cited "non-payment." Dkt. 21-1 at 2. It is plausible that this "non-payment" was non-payment of the missed installment, not non-payment of premiums for additional insureds. The timing of the Western World Notice of Cancellation also raises legitimate questions about whether Prime Rate was communicating with Western World throughout this

8

process. What is more, the business record notes in question are not as clear as Prime Rate suggests, and Prime Rate's interpretation of said notes is not self-evident. For instance, around February 13, 2017, Prime Rate agents noted that "TO GET POL INFO AS TO WHY IT CXL'D ADV PER CMD9 UNABLE . . . TO ASSIST THIS WAS CXL BY CO NOT PRATE . . . ADV AGT CHRIS DID NOT KNOW ABOUT THE CXL UNTIL 1/24[.]" Dkt. 21-5 at 2. Prime Rate interprets this to mean that Western World unilaterally canceled the Policy, but that is only one of multiple interpretations. And this is not to mention that Prime Rate's Notice of Cancellation may, possibly, circumstantially evince collusion. In sum, the Court will not dismiss Plaintiffs' claims merely because they are in tension with incomplete notes written by Prime Rate agents identified only as "KROGERS" and "HMILLER." *Id.* Discovery will provide the parties with the opportunity to develop the record on this factual issue. Prime Rate may raise its cancellation argument again at a more appropriate stage.

## II.  Statute of Limitations

The next issue to consider is whether Counts I and II are untimely. Because the statute of limitations is an affirmative defense, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *LaGrasta*, 358 F.3d at 845 (internal quotations and citations omitted). Under Florida law, actions founded on a statutory

liability (Count I) or negligence (Count II) are subject to a four year statute of limitations.[4] "[T]he time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Fla. Stat. § 95.031. "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). And here, the last elements of Plaintiffs' causes of action are damages. *See Kelly v. Lodwick*, 82 So. 3d 855, 857 (Fla. 4th DCA 2011) (finding that "[t]he last element constituting a cause of action for negligence . . . is the occurrence of damages"); *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, No. 17-CV-22462-UU, 2018 WL 7287192, at *13 (S.D. Fla. Jan. 31, 2018) (finding damages to be the last element constituting a cause of action for a statutory violation under Fla. Stat § 95.11(3)(f)).[5]

The primary statute of limitations question, then, is when Plaintiffs' damages actually occurred. In analyzing this issue, courts often rely on the "first injury rule":

> The general rule, of course, is that where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time and the running of the statute is not

---

[4] Florida Statute § 95.11(4)(c) now provides that an action founded on negligence is subject to a two-year limitation. Plaintiffs nevertheless filed the instant action prior to legislative amendment and said amendment has no retroactive application. *See* FL LEGIS 2023-15, 2023 Fla. Sess. Law Serv. Ch. 2023-15 (C.S.C.S.H.B. 837) (WEST) ("The amendments made by this act to s. 95.11, Florida Statutes, apply to causes of action accruing after the effective date of this act.").

[5] Prime Rate maintains that Plaintiffs' claims are in fact contract claims brought under the guise of common law negligence and a non-existent statutory violation. Dkt. 31 at 11. The Court disagrees for reasons that will be discussed below.

>  postponed by the fact that the actual or substantial damages do not occur until a later date.

*City of Miami v. Brooks*, 70 So. 2d 306, 308 (Fla. 1954) (citation omitted). But courts sometimes apply a special rule called the "finality accrual rule" when "the plaintiff's damages exist by virtue of an enforceable court judgment. In these circumstances, the statute of limitations begins to run when the underlying judgment becomes final." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla.), *opinion after certified question answered,* 844 F.3d 944 (11th Cir. 2016).

The first injury rule applies in this case. As other courts have reasoned in the context of insurance coverage disputes, the key distinction between first injury rule applicability and finality accrual rule applicability is a "complete lack of insurance coverage" versus "existent, yet inadequate, coverage[.]" *Am. K-9 Detection Servs., Inc. v. Rutherford Int'l, Inc.*, No. 6:14-CV-1988-ORL-37-TBS, 2016 WL 2744958, *10 (M.D. Fla. May 11, 2016). Where there is a complete lack of coverage, a defendant is "forced to defend themselves against the plaintiffs' claim and thereby incur[s] damages" by that very fact. *Kelly v. Lodwick*, 82 So. 3d 855, 858 (Fla. 4th DCA 2011). Where there is partial coverage, however, only the possibility of future damages exist until a final judgment is entered. *See Med. Data Sys., Inc. v. Coastal Ins. Grp., Inc.*, 139 So. 3d 394, 396 (Fla. 4th DCA 2014) (discussing the applicability of *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061 (Fla. 2001) where "appellant had an insurance policy, but the policy did not provide the necessary coverage).

11

Here, there is no dispute that the Policy was canceled prior to the Underlying Lawsuit. The Insureds (and Plaintiffs' through assignment) were therefore first concretely injured when they were forced to defend themselves in said lawsuit.

Unsurprisingly, the parties disagree about when this first defense (injury) happened. On one hand, Prime Rate argues that the Insureds were first forced to defend themselves on November 10, 2017, when Mr. Meadows was deposed in the Underlying Lawsuit. Dkt. 31 at 13. On the other hand, Plaintiffs argue that the Insureds were first forced to defend themselves on March 9, 2020, when they appeared and filed their answer. Dkt. 37 at 15.

The Court disagrees with both sides—the Insureds first defended after they were served on February 19, 2020. As an initial matter, Mr. Meadows' November 10, 2017, unrepresented deposition does not qualify as a defense because he was not yet a named defendant in the Underlying Lawsuit. Indeed, while the first injury rule is triggered by the slightest of injuries, "the mere possibility of damage at a later date is insufficient to commence the limitation period." *Kelly*, 82 So. 3d at 859 (cleaned up) (internal quotations and citations omitted). And "[t]he existence of a duty to defend is determined based on only the allegations of the underlying complaint." *Hale v. State Farm Fla. Ins. Co.*, 51 So. 3d 1169, 1171 (Fla. 4th DCA 2010) (internal quotations and citations omitted). Mr. Meadows could not have been concretely injured by wrongful cancelation of the Policy resulting in a failure to defend before

any duty to defend arose. Moving forward, Plaintiffs' amended complaint, which named the Insureds as defendants on January 26, 2018, did not trigger a defense either. The Insureds were never served. They did not attempt to tender any defense to Western World until at least February 19, 2020. And, more fundamentally, one cannot defend against a lawsuit that one is not aware of. From the face of the Amended Complaint, the Insureds were not aware of any lawsuit *against them* until February 19, 2020. *See LaGrasta*, 358 F.3d at 845. Finally, although it is not dispositive, the Court notes that the Insureds' defense had already been triggered by March 9, 2020. It strains credence to assume that the Insureds took no steps in defending themselves until the very day that their first responsive pleading was filed.

Given the foregoing, Counts I and II are not time-barred. Approximately three years and five months passed between February 19, 2020, and July 10, 2023. As explained above, the applicable limitation period is four years.

### III.  Florida Statutes § 627.848 (Count I)

This brings the Court to Prime Rate's Count I-specific arguments. Prime Rate essentially makes two related points: (1) the Amended Complaint "offers no allegation that Prime Rate failed to provide the statutorily required notice before cancelling the [P]olicy[,]" and (2) "section 627.848 creates no statutory cause of action for 'wrongful cancelation.'" Dkt. 31 at 7–9. Ultimately, the Court finds these arguments unpersuasive.

13

Florida Statutes § 627.848 provides, in relevant part, that:

(1) When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions:

(a) 1. Not less than 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel her or his insurance contract unless the defaulted installment payment is received within 10 days.

2. After expiration of such period, the premium finance company shall mail to the insurer a request for cancellation, specifying the effective date of cancellation and the unpaid premium balance due under the finance contract, and shall mail a copy thereof to the insured at her or his last known address as shown on the premium finance agreement.

*****

(f) If an insurance contract is canceled by an insurer upon the receipt of a copy of the cancellation notice from a premium finance company, and if such premium finance company has failed to provide the notice required by this subsection, the insured shall have a cause of action against the premium finance company for damages caused by such failure to provide notice.

In light of this language, Prime Rate's "wrongful cancellation" argument strikes the Court as somewhat semantic. It is important to recognize that section 627.848 addresses situations where an insured is at risk of losing his or her insurance coverage without notice due to the unilateral actions of a premium finance company. In this context, it is not difficult to envision a scenario where "damages caused by a "such a failure to provide notice" would amount to the same damages caused by a

14

"wrongful cancellation." This is because a failure to provide notice may also lead to a lapse in insurance coverage which obliviates an insurer's duty to defend and indemnify an insured later on. And this is exactly what Plaintiffs allege. They allege that the Insureds lost coverage without proper notice, that the Insureds continued paying installments to Prime Rate, and that the Insureds were then denied defense and indemnity by Western World when they were sued. Whether Plaintiffs titled Count I "wrongful termination" or "failure to provide notice" is therefore largely immaterial at this stage. Depending on the case Plaintiffs make and what Plaintiffs are able to prove, their damages might be the same regardless.

This commonsense interpretation of section 627.848(1)(f)'s reach is also bolstered by section 627.848's attorneys' fees provision. Section 627.848(2) specifically provides that "[a]ny court . . . rendering or affirming a judgment or decree against a premium finance company and in favor of any named or omnibus insured or beneficiary <u>arising out of a wrongful or improper cancellation of an insurance policy by such premium finance company</u> shall award reasonable attorney's fees[.]" Fla. Stat. § 627.848(2) (emphasis added). And a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all its parts." *Fla. Virtual Sch. v. K12, Inc.*, 148 So. 3d 97, 101–02 (Fla. 2014) (internal quotations and citations omitted). Sections 627.848(1)(f) and (2) enjoy the most harmony and make the most sense where they are read as contextualizing one

15

another—damages related to a wrongful or improper cancellation are the damages that most naturally flow from a failure to provide notice. The Florida Legislature recognized this and contemplated "damages caused by . . . a failure to provide notice" to include "wrongful or improper cancellation" damages caused by inadequate notice.

Finally, the Court notes that the Amended Complaint does indeed allege that Prime Rate failed to provide statutorily required notice before cancelling the Policy. Plaintiffs allege that: (1) the Insureds were given Prime Rate's Notice of Intent and Notice of Cancellation; (2) the Insureds paid all of their installments and late fees prior to the dates provided therein; (3) Prime Rate assured the Insureds that the Policy had not been canceled after said payment; and (4) Prime Rate prematurely canceled the Policy anyways. *See generally* Dkt. 21. If this is true, Prime Rate's notice would be inadequate under section 627.848. The Court will consequently not dismiss Count I on either of the grounds put forth by Prime Rate. *See Pielage*, 516 F.3d at 1284 (explaining that, at the 12(b)(6) stage, "we take the factual allegations in the complaint as true").

### IV.   The Independent Tort Doctrine (Count II)

The only remaining issue is whether Plaintiffs' common law negligence claim is foreclosed by the independent tort doctrine. The Court finds that it is not.

16

"It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3rd DCA 2020). "[W]here a breach of contract is combined with some other conduct amounting to an independent tort," however, "the breach can be considered negligence." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (internal quotations and citations omitted). This is because the independent tort doctrine only serves to "bar a tort claim where the offending party has committed no *breach of duty* independent of a breach of its contractual obligations." *Yuken Corp. v. Gedcore LLC*, No. 22-20661-CIV, 2022 WL 3701233, *3 (S.D. Fla. June 21, 2022) (emphasis added) (internal quotations and citations omitted).

As a preliminary matter, the Court cannot consider the attachment to Prime Rate's supplemental briefing (the alleged second page of the Agreement) because Plaintiffs' challenge its authenticity. *See* Dkt. 45 at 4; *Horsley*, 304 F.3d at 1134. The Agreement Plaintiffs attach, moreover, provides nothing about the duty to provide notice prior to cancellation. Dkt. 21-2 at 2–3. As far as the Court can tell at this stage, the duty to provide such notice comes entirely from section 627.848. And "Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because the standard of conduct or care embraced within such a legislative measure represents a standard of at least reasonable care which should be

17

adhered to in the performance of any given activity." *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (cleaned up) (internal quotations and citations omitted). Plaintiffs have therefore sufficiently alleged an independent tort. That said, the Court's analysis may differ at a later stage if the record is further developed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Prime Rate's Motion to Dismiss (Dkt. 31) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 8, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record